CASE 62—INDICTMENT—DECEMBER 17.

# Stanley, &c., v. Commonwealth.

APPEAL FROM CHRISTIAN CIRCUIT COURT.

CRIMINAL LAW—DEFENSE OF OTHERS.—Where one may kill in his own defense, because of danger, either real *or apparent*, another may do so for him; but one who thus interferes is guilty of murder if the person in whose defense he acts was in fault.

The instructions in this case were erroneous in restricting the defendant's right to act in defense of another to the existence of *actual* danger to the latter.

JOHN FELAND, R. W. HENRY & D. L. JOHNSON FOR APPELLANTS.

The law of self-defense applies to every one who kills in the apparently necessary defense of another from death or great bodily harm. It is not confined to the relations of parent and child, husband and wife, master and servant, and brother and sister. (Desty on Criminal Law, sec. 126; Bishop's Criminal Law, sec. 877; Wharton's Criminal Law, sec. 533; Gray v. Combs, 7 J. J. M., 478; McClelland v. Roy, 14 B. M., 84; Roberts v. Commonwealth, MS. Op., Court of Appeals, 1876; Roe v. Commonwealth, 6 Law Rep., 364; Wharton on Homicide, sec. 533; Weaver v. State, 19 Texas, 547; Ross v. State, 10 Texas, 455; People v. Flannagan, 60 Cal., 2; Noles v. State, 26 Ala., 31; State v. Rutherford, 1 Hawks, 457; State v. Roane, 2 Div., 58; Oliver v. State, 17 Ala., 578; Pond v. People, 8 Mich., 150.)

P. W. HARDIN, ATTORNEY-GENERAL, FOR APPELLEE.

To justify killing in defense of the life of another there must be a well-grounded and reasonable belief, entertained in good faith, that the life of the other is in immediate and imminent danger. (Wharton on Criminal Law, sec. 495.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The appellants, Renzy and Harmon Stanley, seek to excuse the killing of Rufus Ebling, upon the ground that it was done by them to save the life of William Stanley, who is the brother of the one and the uncle of the other.

It is a general rule, that whatever a person may lawfully do in his own defense, another may do for him. Mr. Bishop, in speaking of the right to assist others in defense of person and property, says :

"The doctrine here is that whatever one may do for himself he may do for another ; * * * * and on the whole, though distinctions have been taken and doubts expressed, the better view plainly is that one may do for another whatever the other may do for himself." (1 Bishop on Criminal Law, section 877.)

Another writer uses this language : "A well-grounded belief that a felony is about to be committed will extenuate homicide committed in prevention, but not in pursuit, by a volunteer. · * * * A *bona fide* belief that a felony is in process of commission, which can only be arrested by the death of the supposed felon, makes the killing excusable ; but the belief must be honestly entertained, and without negligence ; and if non-negligent, it will excuse the homicide. * * * A person has a right to repel a felony threatened to be perpetrated either on himself or others. · * * * The intentional infliction of death is justifiable when it is inflicted by any person in order to defend himself or any other person from immediate and obvious danger of instant death or grievous bodily harm, if he, in good faith, and on reasonable grounds, believes it to be necessary when he inflicts it. * * * *. Self-defense will justify a person in defending those with whom he is associated, and in killing, if he believes life is in danger ; and the right may be exercised by the servants and friends of the party assaulted, or any one present, in repelling an attempted felony." (Desty's American Criminal Law, sections 125*d*, 126 and 126*a*.)

The courts were slow to adopt this doctrine in its full extent, doubtless for fear that it might be abused, and sometimes serve as a shelter to those who, under the plea of protecting the lives of others, merely executed their own guilty purposes. It was, however, declared by this court in the unpublished opinions in the cases of Roberts v. The Commonwealth (1876), and Smith v. The Same (1877), and is not open to this objection when properly applied.

The right of self-defense rests upon necessity, and apparent reasonable necessity is the whole law and reason of it. It was not derived from society. It is a natural right, instinctive in the person. Man, when he came into society, brought it with him in all its freedom and broadest sense. It has been restricted by law in its exercise to cases of necessity, but cannot be altogether denied. If it were possible, it should not be, because, as now restricted, it serves to protect right against wrong in emergencies where the law would not avail.

It is the duty of a man who sees a felony attempted by violence to prevent it, if possible. This is an active duty, and hence he has a legal right to use the means necessary to make the resistance effectual. If A be unlawfully assaulted by B, and his life thereby endangered, he may, by reason of not being in fault, defend it even to the extent of taking the life of the person who is in fault; and as the right is a natural one, rules of law restricting it must, in order that it may still be effective, be adapted to his character and nature. He may, therefore, act upon appearances, if he acts reasonably; and if assailed by another, and he

Stanley, &c., v. Commonwealth.

believes and has reasonable ground to believe that his life is thereby endangered, he may even take life in its apparent necessary defense.   So great, however, is the law's regard for human life that he must be careful, and not violate the restriction that law and society have placed upon this right of self-defense, to-wit : He must act from necessity, or reasonable apparent necessity, and not be in fault.

Not only, however, may he do this, but another may do it for him.   This other person, in such a case, steps into the place of the assailed, and there attaches to him not only the rights, but also the responsibilities, of the one whose cause he espouses.   If the life of such person be in immediate danger, and its protection requires life for life. or if such danger and necessity be reasonably apparent, then the volunteer may defend against it, even to the extent of taking life, provided the party in whose defense he acts was not in fault.   He interferes at his peril, if the person slain was not in fault.   In the language of Mr. Wharton, "a person interposing, particularly if he be a stranger, should act with much caution."   This necessarily follows, because he takes the place of one of the combatants, and can only do for him what he had the right to do under the circumstances in defense of himself. Thus, if A unlawfully assaults B, endangering the latter's life, C has no right, because he may come upon the scene of conflict at a time when, during its progress A is in danger, to kill B.   This would be murder in C, just as it would in A.   Any other rule could not be tolerated.   The innocent cannot be sacrificed to save the guilty.   This would be paradoxical.   A volunteer must

not kill in behalf of one in fault. This would be what some writers have termed a negligent killing. He may, however, do so for one not in fault, if the impending danger thus brought about be either actual or apparent. In other words, as the person not in fault may, if he believes and has reasonable grounds to believe that his life is in immediate danger, defend it to the extent of taking life, so another may act upon the like appearances as to such danger, and defend it for him to the same extent. Here a felony is attempted ; and in killing the attempter, through the necessity to save an innocent person, the one so doing is in the condition of *se defendendo* in defending the one not in fault. In such a case the doctrine of self-defense in all its principles extends to the accused, just as it would if the felony had been attempted upon him, or as it would apply to the one in danger if he had done the killing.

Applying this rule to the case in hand, the judgment cannot stand. The fourth instruction reads thus :

"The court instructs the jury that, in addition to the right of self-defense as defined in instruction number three (relative to the right of self-defense upon the part of the accused when he is in danger), that if they believe from the evidence that, at the time of the killing of Rufus Ebling by Harmon and Renzy Stanley, if they did so kill him, the said Ebling was then unlawfully, willfully and feloniously, and not in his own necessary self-defense about to kill Wm. Stanley, or about to inflict great bodily harm upon him with a deadly weapon maliciously and unlawfully, and not in his own necessary self-defense, then the said Harmon and Renzy Stanley might lawfully interfere to prevent said

Stanley, &c., v. Commonwealth.

injury, and might even take the life of said Ebling, provided such extremity be *necessary* to prevent such killing of or injury to Wm. Stanley; and provided further, that said Harmon and Renzy Stanley had not theretofore and in said rencounter been engaged in an unlawful attack with force and arms on said Ebling."

After what we have said, it is unnecessary to comment at length upon this instruction. It is evident that it confined the right of the appellants to act in defense of Wm. Stanley's life to the existence of *actual* danger to it. It did not allow them to act in good faith upon *appearances*, however reasonable. Under it they could only act if, as *a matter of fact*, in the judgment of the jury, the life of Wm. Stanley was, at the time of the killing, in *actual* danger at the hands of the deceased, and an *actual* necessity existed for the killing.

We intimate no opinion as to the character or weight of the evidence. As there must be another trial, it would not be proper to do so. It is sufficient to say that there was sufficient testimony to authorize the submission of this ground of defense to the jury; and as indicated above, it was not done in proper form.

Judgment reversed, and cause remanded for further proceedings in conformity to this opinion.