**Salem**

HARRY ALBION DIFFENDAL

v.

COMMONWEALTH OF VIRGINIA

No. 1224-87-3

Decided July 18, 1989

418

COUNSEL

Gilbert K. Davis, for appellant.

Eugene Murphy, Assistant Attorney General (Dennis L. Hupp, Commonwealth's Attorney, on brief), for appellee.

OPINION

**BENTON, J.**—Harry Albion Diffendal was convicted of "point[ing] or brandish[ing] [a] firearm . . . in such manner as to reasonably induce fear in the mind of another." Code § 18.2-282. Diffendal contends that the trial judge erred in (1) restricting voir dire of the jury venire and later refusing to grant a mistrial when a juror informed the judge that he was a retired state police officer, and (2) restricting the scope of his defense and refusing to instruct the jury as to his defense. We do not address the first issue because, for the reasons that follow, we hold that the trial judge erred in restricting the scope of the defense, and we reverse the conviction.

On August 1, 1986, Diffendal and a companion, Gaines Brown, went to Arthur Smith's farm to engage in target shooting. Smith,

who is Diffendal's client and friend, was in Alaska at the time. Donna Pete, who also lives in Smith's residence on the farm, had gone to Alaska that morning. While he was away, Smith had empowered Diffendal to look after his property.

The farm is posted, "No Trespassing." Although the farm is at the end of a one lane road that connects to the highway, an automobile cannot be driven from the highway to Smith's residence because the bridge over a creek is in disrepair. When Diffendal and Brown arrived at the farm, they discovered an automobile parked on the road by the creek behind Donna Pete's automobile. Diffendal positioned his vehicle behind the unfamilar automobile.

Barbara Wachter, a police officer from a nearby town, was at the Smith residence. Wachter, whose mother owned adjoining property, testified that she had known Pete since 1975 and that she had been invited to Smith's residence "hundreds" of times. On this occasion, Wachter stated that she went to take Pete to Wachter's mother's house to do laundry. Pete, however, denied that she had invited Wachter to the property or that she intended to do any laundry. Wachter, who had previously given a game warden information that formed the basis for a search of the Smith property on July 3 and July 30, also testified that she was asked by the game warden to go to the residence "to check on [Pete], to see if she was okay." The residence was locked when Wachter arrived. As Wachter was trying "to open the sliding door" to "holler in," she heard a vehicle enter the road from the main highway. Wachter testified that she waited at the residence for a while because she believed Pete may have been in the vehicle that arrived.

After no one appeared, Wachter, who was dressed in casual slacks and a t-shirt, went down the path to her vehicle. Wachter was also wearing a holstered handgun. Wachter testified that when she left the house, she checked the handgun on her belt and pulled the t-shirt out of her slacks so that the handgun was underneath the t-shirt. As she neared her vehicle, Diffendal and Brown, "jumped out from behind a bunch of trees with guns pointing at [her]." Diffendal said to her, "This is private property," to which Wachter replied, "I know. Where is Donna?" Diffendal did not know Wachter and asked Wachter to identify herself. The conversation continued about Pete's whereabouts.

Wachter testified that Diffendal began to talk about the police having earlier been on the property, at which time she told Diffendal that she was wearing a gun. She testified that Diffendal said "he thought [she] was a cop" and then stated that if other police officers came to search the property he would shoot first and read the warrant later. During the conversation, Diffendal lowered the gun. Diffendal, a lawyer, testified that due to his suspicion that the two previous searches involved police misconduct, he said to Wachter: "As a matter of fact, we thought that you might have been a police officer, because of seeing the clipboard in the car. I wouldn't like to catch a police officer up here without a warrant." Wachter never identified herself as a police officer.

After this brief conversation, Wachter walked to her vehicle accompanied by Diffendal, whose rifle was "cradled in his arm," and Brown, whose rifle "was pointed down." Diffendal moved his automobile, which was blocking the one lane road behind Wachter's car, and Wachter left the premises. Wachter then called the game warden, who had searched Smith's property. He advised her to secure arrest warrants and accompanied her when she secured the warrants.

Throughout the proceedings below, and in numerous instructions, Diffendal sought to show that even if a violation of Code § 18.2-282 occurred, he was privileged to detain Wachter by pointing a firearm at her because he reasonably believed her to be a trespasser who posed a threat to himself and the Smith property. The trial judge thwarted Diffendal's efforts to assert that defense and denied Diffendal's proffered instructions, stating, "I don't think what you are arguing here right now . . . is the law in Virginia." In so doing, the trial judge erred.

■ To gain a conviction under Code § 18.2-282, the Commonwealth must prove two elements: "(1) pointing or brandishing a firearm, and (2) doing so in such a manner as to reasonably induce fear in the mind of a victim." *Kelsoe v. Commonwealth*, 226 Va. 197, 198, 308 S.E.2d 104, 104 (1983). Code § 18.2-282 is silent, however, on the subject of possible defenses to the charge.[1]

---

[1] Code § 18.2-282 states in pertinent part:
(a) It shall be unlawful for any person to point, or brandish any firearm, as hereinafter described, or any object similar in appearance to a firearm, whether capable of being fired or not, in such manner as to reasonably induce fear in the mind of an-

Although no decided Virginia cases address the particular defenses that can be raised, we are aided in resolving this question by well established rules of statutory construction.

"Whatever is newly created by statute draws to itself the same qualities and incidents as if it had existed at the common law. In other words, the statute is to be interpreted after the rules and incidents of the common law."

*Adkins v. Commonwealth*, 175 Va. 590, 599, 9 S.E.2d 349, 353 (1940) (quoting *Chichester v. Vass*, 5 Va. (1 Call) 83, 102 (1797)).

 The common law in this state has long recognized that a person who reasonably apprehends bodily harm by another is privileged to exercise reasonable force to repel the assault. *Jackson v. Commonwealth*, 96 Va. 107, 113, 30 S.E. 452, 454 (1898); *see also Montgomery v. Commonwealth*, 99 Va. 833, 835, 37 S.E. 841, 842 (1901) (recognizing the right of a landowner "to order [a trespasser] away, and if he refuse[s] to go, to use proper force to expel him" so long as no breach of the peace is committed in the outset). The privilege to use such force is limited by the equally well recognized rule that a person "shall not, except in extreme cases, endanger human life or do great bodily harm." *Montgomery v. Commonwealth*, 98 Va. 840, 843, 36 S.E. 371, 372 (1900). Moreover, the amount of force used must be reasonable in relation to the harm threatened. *See id.* at 844, 36 S.E. at 373 ("it is not reasonable to use deadly force to prevent threatened harm to property, such as a mere trespass or theft"); W. LaFave & A. Scott, *Criminal Law* § 5.9(a) (2d ed. 1986).

At trial, Diffendal attempted to defend on the ground that even if, as the Commonwealth asserted, he pointed the shotgun, he was privileged to do so under the circumstances. At most, the present case involved no more than a threat to use deadly force, as distinguished from the actual resort to such force. *See Montgomery*, 98 Va. at 841, 36 S.E. at 372. We cannot say that the threat to use deadly force constituted excessive force as a matter of law under the circumstances of this case. The question whether Diffendal reasonably perceived Wachter, an armed trespasser, to pose a

other. Persons violating the provisions of this section shall be guilty of a Class 1 misdemeanor.

threat to himself and the Smith property was a jury question. The evidence indicates that the Smith residence is located in a remote, rural area, accessible only by a single lane road. Smith's residence contained numerous items of value which could be secreted on a person and carried away. Diffendal, who was authorized to look after the property, testified that he did not know the person who was leaving the residence.

Wachter was dressed in street clothes and was armed. It is undisputed that Wachter did not at any point identify herself as a police officer. The testimony is conflicting, however, as to whether the revolver could have been seen protruding from under the t-shirt she was wearing. Wachter did not believe it was noticeable. Diffendal testified that he saw the gun holster as Wachter came down the path. Diffendal further testified that he warily approached the armed intruder to determine her identity and reason for being on the property. Although Wachter testified that Diffendal and Brown pointed their rifles at her, she testified that after Diffendal asked who she was and after she identified herself, Diffendal relaxed and lowered the rifle as the conversation ensued.

In view of this testimony, we conclude that a factual issue was raised whether Diffendal's pointing of the shotgun was reasonably proportioned to the perceived threat posed by Wachter's presence on the property while armed with a handgun. The resolution of that issue was a question appropriately within the province of the jury. *See United States v. Black*, 692 F.2d 314, 318-19 (4th Cir. 1982) (Inmate defendant's "threat" to use knife in response to perceived danger posed by correctional officer was not excessive as a matter of law; consequently, an erroneous instruction which foreclosed from jury's consideration reasonableness of force used was not harmless). Furthermore, where evidence tends to sustain both the prosecution's and the defense's theory of the case, the trial judge is required to give requested instructions covering both theories. *Jackson*, 96 Va. at 114, 30 S.E. at 454. As this Court noted in *Cooper v. Commonwealth*, 2 Va. App. 497, 345 S.E.2d 775 (1986), "[t]he purpose of an instruction is to furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict." *Id.* at 500, 345 S.E.2d at 777.

Although we conclude that Diffendal was entitled to an instruction concerning his theory of the case and that the trial court erred in refusing proffered instructions, we also note that

Diffendal proffered seventeen instructions. Obviously, " '[i]t is not desirable to multiply instructions.' " *Johnson v. Commonwealth*, 2 Va. App. 447, 457, 345 S.E.2d 303, 309 (1986) (quoting *Ambrose v. Commonwealth*, 129 Va. 763, 766, 106 S.E. 348, 349 (1921)). Moreover, any instruction that is given should relate to the specific evidence in the case, *Terry v. Commonwealth*, 5 Va. App. 167, 170, 360 S.E.2d 880, 882 (1987), and should not incorrectly state the law or mislead the jury. *See Cooper*, 2 Va. App. at 500, 345 S.E.2d at 777. On remand, the trial judge may properly refuse any instructions that are misleading or redundant. *See Agostini v. Commonwealth*, 136 Va. 658, 663, 116 S.E. 384, 385 (1923). We leave this determination for the trial court based on the evidence as presented upon re-trial.

Accordingly, we reverse the judgment of conviction and remand the case for retrial if the Commonwealth be so advised.

*Reversed and remanded.*

Koontz, C.J., and Coleman, J., concurred.