## Alexandria

## INESCIO DELACRUZ

v.

## COMMONWEALTH OF VIRGINIA

No. 0799-89-4

Decided November 20, 1990

COUNSEL

Gerald Bruce Lee (Cohen, Dunn & Sinclair, P.C., on brief), for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General; Birdie Jamison, Assistant Attorney General, on brief), for appellee.

OPINION

**BENTON, J.**—Inescio Delacruz was convicted by a jury of brandishing a firearm in violation of Code § 18.2-282 and fined $500. The sole question presented by this appeal is whether Delacruz was entitled to have the jury instructed on the law of self defense. For the reasons that follow, we conclude that the jury should have been so instructed.

The statement of facts recites that twelve police officers, some of whom were not in uniform, went to Ramon Bido's residence at 11 p.m. with a warrant for Bido's arrest. Four families, including Delacruz and his wife, lived in the single family residence where Bido lived. One hour prior to the arrival of the police, Delacruz and his wife arrived home. Delacruz and his wife both worked two jobs that day and went to bed in their basement bedroom at 10:30 p.m.

When the officers arrived at the residence, a Spanish speaking officer explained the purpose of the raid to the teenager who opened the door. Armed with shotguns and other weapons, the officers rushed in and began to search the residence. Four officers who were not in uniform and the Spanish speaking officer, who was in uniform, headed for the basement stairs. Bido's wife told them that Bido was not in the basement and that the families who

lived in the basement did not speak English. When the officers entered the basement, they kicked in the door to the bathroom, removed a man from the shower, and ordered him to lie on the floor of the family room. The officers also removed Delacruz's brother and the brother's wife from a bedroom and sent them to the family room.

According to the Commonwealth's evidence, one of the officers observed through a space at the bottom of a door that a light was turned on in another room. The officers heard movement in that room and tried to open the door. After the officers tried several times to open the locked door, one officer kicked the door and another rammed the door with his shoulder. The door was knocked off its hinges and crashed into the room. Two officers testified that they "shouted in Spanish, 'Police! Open the door!' " as they forced in the door. Delacruz was knocked down by the door but pointed a gun at a police officer. The officer testified that he shouted twice in English, "Police! Drop the gun!" and held his badge facing Delacruz. He testified that he shot Delacruz when Delacruz did not drop the gun. Delacruz fell over the bed and came back up with the gun. Other officers shot into the room with a shotgun and handguns. Delacruz never fired his handgun.

Delacruz testified that he was awakened by the commotion and screams and thought that intruders or robbers were invading the house. He retrieved a loaded handgun from under his bed and stood by the door. His wife stood on the other side of the door. As they were trying to determine what was occurring, the door crashed in and knocked him onto the bed. The door fell over his wife. Two of the residents who had been directed to the family room testified that the officers were shouting in English as they "crashed through the door, not prior to the application of force at the door." Other residents testified that the Spanish speaking officer was upstairs when the shooting began and then rushed to the basement. Delacruz testified that he heard no announcement as the door crashed in and that he did not know that the men who rushed in were police. Delacruz further testified:

that if he pointed the gun it was incidental to falling down. He stated he did not intentionally point a gun at Investigator Whilden. He learned the men were police when he was lying on the bed bleeding from gunshot wounds and observed Of-

ficer Lopez in a Fairfax County Police uniform.

Delacruz was wounded by a shot in the stomach. His wife was hit by a bullet and a shotgun blast and died.

Instruction Number 1, which the trial judge gave to the jury, covered the elements of brandishing a firearm: "The Commonwealth must prove beyond a reasonable doubt . . . (1) that the defendant pointed or brandished a firearm; and (2) that the defendant did so in such a manner as to reasonably induce fear in the mind of another person." The trial judge rejected, however, the following instructions offered by Delacruz:

> Instruction Number E: If you believe that the defendant was without fault in provoking or bringing on the incident and if you further believe that the defendant reasonably feared, under the circumstances as they appeared to him, that he was in danger of being killed or that he was in danger of great bodily harm, then his brandishing a firearm was in self defense and you shall find the defendant not guilty.

> Instruction Number A: [Identical to Instruction Number 1 with this additional language] The jury is instructed that any police officer, in the performance of his duty in making an arrest under the provisions of the law shall not be civilly liable in damages for injuries or death resulting to the person being arrested if he had reason to believe that the person being arrested was pointing, or brandishing such firearm . . . with the intent to induce fear in the mind of another.

If there is evidence in the record to support the defendant's theory of defense, the trial judge may not refuse to grant a proper, proffered instruction. *See Painter v. Commonwealth*, 210 Va. 360, 365, 171 S.E.2d 166, 168 (1969). "Furthermore, where evidence tends to sustain both the prosecution's and the defense's theory of the case, the trial judge is required to give requested instructions covering both theories." *Diffendal v. Commonwealth*, 8 Va. App. 417, 422, 382 S.E.2d 24, 26 (1989). When instructing the jury, the trial judge must be mindful that:

> [t]he jury is not required to accept, *in toto*, either the theory of the Commonwealth or that of an accused. They have the

right to reject that part of the evidence believed by them to be untrue and to accept that found by them to be true. In so doing, they have broad discretion in applying the law to the facts and in fixing the degree of guilt, if any, of a person charged with a crime.

*Belton v. Commonwealth*, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958) (citations omitted). The evidence in this record could support a jury finding that Delacruz acted in self defense. *See Diffendal*, 8 Va. App. at 420-22, 382 S.E.2d at 25-26.

▮ The Commonwealth asserts, however, that Instructions "F" and "I," which were proffered by Delacruz and accepted, sufficiently advised the jury of Delacruz's right to arm himself.[1] Although both instructions were appropriately given, it cannot be fairly said that either instruction fully informed the jury of the right of self defense or offered the jury the option of finding Delacruz not guilty. As this Court noted in *Cooper v. Commonwealth*, 2 Va. App. 497, 345 S.E.2d 775 (1986), "[t]he purpose of an instruction is to furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict." *Id.* at 500, 345 S.E.2d at 777. Instruction E was appropriate to the factual issue proved in this case and, unlike Instructions F and I, guided the jury with respect to the law of self defense. Accordingly, we conclude that the trial judge erred in refusing to so instruct the jury.

Delacruz also contends that his Instruction A, which covered the elements of the offense of brandishing a firearm, should have been granted instead of Instruction 1 which the trial judge gave. We conclude that this argument has no merit. Instruction A differed from Instruction 1 only in that Instruction A contained the following additional paragraph:

---

[1] Those instructions read as follows:

*Instruction Number F: In passing upon the danger, if any, to which the accused was exposed, you will consider the circumstances as they reasonably appeared to the accused and draw such conclusions from these circumstances as he could reasonably have drawn, situated as he was at the time; in other words, the court instructs you that the accused is entitled to be tried and judged by facts and circumstances;*

Instruction Number I: When a person reasonably apprehends that another intends to attack him for the purpose of killing him or doing serious bodily harm, then such person has a right to arm himself for his own necessary self-protection, and in such case, no inference of malice can be drawn from the fact that he prepared for it.

> The jury is instructed that any police officer, in the performance of his duty in making an arrest under the provisions of the law shall not be civilly liable in damages for injuries or death resulting to the person being arrested if he had reason to believe that the person being arrested was pointing, or brandishing such firearm, or object which was similar in appearance to a firearm, with the intent to induce fear in the mind of another.

Although the paragraph contains almost verbatim language from Code § 18.2-282(b), that language pertains to civil actions and had no bearing upon the questions before the jury.

For the reasons stated, we reverse the judgment of conviction and remand the case for retrial if the Commonwealth be so advised.

*Reversed and remanded.*

Barrow, J., and Moon, J., concurred.