Norfolk

CLEANDREW FOSTER

v.

COMMONWEALTH OF VIRGINIA

No. 1269-90-1

Decided December 10, 1991

COUNSEL

Patricia A. Cannon, for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**—Cleandrew Foster was convicted of unlawful wounding in violation of Code § 18.2-51. On appeal, he contends that the trial court erred by refusing to instruct the jury on self-defense and defense of others and that the Commonwealth's attorney violated the equal protection clause of the fourteenth amend-

ment by using three peremptory challenges to exclude black members from the jury based on their race. We agree that the trial court erred by refusing to instruct the jury as to the law of self-defense; thus, we do not reach Foster's challenge to whether the jury was properly empaneled. Foster's proposed instruction on defense of others was an erroneous statement of the law; thus, the trial court did not err in refusing it.

On July 11, 1986, Foster, who was an inmate at the Southampton Correctional Center in Southampton County, Virginia, was playing horseshoes with several other inmates in the prison's recreation yard. Foster was standing at one end of the pit, and David Robinson and James Hooks, who were at the other end, were arguing over whose turn it was to play. Foster took his turn, and both Robinson and Hooks grabbed one of the horseshoes he had thrown. They engaged in a tugging match over the horseshoe. Robinson held another horseshoe in his right hand.

The evidence was in conflict as to the subsequent events. According to the Commonwealth's evidence, James Hooks moved behind Robinson after Hooks released the horseshoe. Robinson turned toward Hooks in anticipation of a fight, and when he did, Foster came from behind and hit Robinson in the head with a horseshoe. Robinson and Foster then began to fight. According to Foster's evidence, he walked from his end of the horseshoe pit to the other in order to prevent a fight between Hooks and Robinson. When Foster reached them, Robinson drew back a horseshoe as if to hit either him or Hooks, and, to defend against the blow, Foster struck Robinson one time. Then, either Foster walked away and Robinson pursued and hit him with a horseshoe, or the men began to exchange blows with horseshoes immediately. Thereafter, correctional officers interceded to break up the fight.

Foster was indicted by a grand jury in the Circuit Court for the County of Southampton, Virginia on one count of malicious wounding in violation of Code § 18.2-51. At trial, defense counsel offered jury instructions as to the law of self-defense and defense of others.[1] The court refused them. The jury found Foster guilty of unlawful wounding and fixed his punishment at four years in

---

[1] Instruction 6A: "If you believe that the defendant was without fault in provoking or bringing on the fight and if you further believe that the defendant reasonably inferred under the circumstances as they appeared to him that he was in danger of being killed or

the penitentiary. The trial judge sentenced Foster in accordance with the jury's verdict.

■ Foster contends that the trial court erred in refusing to instruct the jury on the law of self-defense and/or defense of others. A party is entitled to have the jury instructed according to the law favorable to his or her theory of the case if evidence in the record supports it. *Delacruz v. Commonwealth*, 11 Va. App. 335, 338, 398 S.E.2d 103, 105 (1990). Thus, in deciding whether the trial court should have instructed on self-defense or defense of others, we must look at the evidence in the light most favorable to Foster's theory of what occurred between him and Robinson, since a trial judge may not refuse to grant a proper, proffered instruction if evidence in the record supports the defendant's theory of defense. *See id.* Because evidence in the record tends to support Foster's self-defense theory, we agree with his contention that the proffered self-defense instruction should have been given. We reject his contention regarding the proffered defense of others instruction because it misstates the applicable law.

■ "[A] person who reasonably apprehends bodily harm by another is privileged to exercise reasonable force to repel the assault." *Diffendal v. Commonwealth*, 8 Va. App. 417, 421, 382 S.E.2d 24, 25 (1989). However, the amount of force used to defend oneself must not be excessive and must be reasonable in relation to the perceived threat. *Id.* at 421, 382 S.E.2d at 26. Further, "[i]f there is evidence in the record to support the defendant's theory of defense, the trial judge may not refuse to grant a proper, proffered instruction." *Delacruz*, 11 Va. App. at 338, 398 S.E.2d at 105. Where the conflicting evidence tends to sustain either the prosecution's or defense's theory of the case, the trial judge must instruct the jury as to both theories. *Id.* The jury as the finder of fact has the right to "reject that part of the evidence believed by them to be untrue and to accept that found by them to be true." *Belton v. Commonwealth*, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958). Therefore, the trial court must instruct on both theories to guide a

---

that he was in danger of great bodily harm, then the wounding was self-defense and you shall find the defendant not guilty."

Instruction 6B: "If you believe that the defendant was injecting himself into a fight to assist James Hooks, who was in a fight with David Robinson, because he reasonably believed that James Hooks was in danger of great bodily harm, then the wounding was in defense of another."

jury in their deliberations as to the law applicable to the case, depending upon how the jury decides the facts. *See Cooper v. Commonwealth*, 2 Va. App. 497, 500, 345 S.E.2d 775, 777 (1986).

At trial, Foster testified that he "thought he [Robinson] was going to hit me or Hooks so I reacted." Three other inmates, Steven Skutans, James Hooks, and Derrick Brown, also testified that Robinson drew back with a horseshoe in his hand as if he were going to strike either Foster or Hooks before Foster struck him. Additionally, both Foster and Derrick Brown testified that Foster struck Robinson once with a horseshoe and that he then began to walk away when Robinson "retaliated and came back at him." Based on the above evidence, Foster tendered jury instruction 6A which is nearly identical to the self-defense justifiable homicide instruction approved by the Supreme Court in *Perricllia v. Commonwealth*, 229 Va. 85, 93, 326 S.E.2d 679, 684 (1985). Nevertheless, the trial court refused to give instruction 6A.

We find that if the jury believed the foregoing evidence which Foster presented, as it had the right to do, that evidence supported Foster's self-defense theory. He proffered an instruction correctly stating the law of self-defense in Virginia. We cannot say, as a matter of law, that if Foster retaliated against a perceived attack with a horseshoe by Robinson with the same type instrumentality, by so doing, he used excessive or unreasonable force. The evidence raised factual issues regarding the reasonableness of the force used, the reasonableness of the perceived threat and whether Foster was without fault in the incident. These issues are properly within the province of the jury to resolve as part of considering the claim of self-defense. *See Diffendal*, 8 Va. App. at 421-22, 382 S.E.2d at 26.

The Commonwealth also contends that the trial court properly refused Foster's proffered self-defense instruction because he was not "without fault" when he interceded to stop the altercation between Hooks and Robinson. The question whether or not Foster was without fault in the incident is another factual issue to be resolved by a properly instructed jury. *See Bell v. Commonwealth*, 2 Va. App. 48, 58, 341 S.E.2d 654, 659 (1986) (not error for court to refuse instruction defining "fault" in self-defense context because "[i]t encompasses any form of conduct on the part of an accused which a jury may reasonably infer from the evidence to

have contributed to an affray"). The jury could have found that Foster, by walking to the other end of the horseshoe pit to prevent an altercation, if that were his purpose, was not at fault and was entitled to stand his ground and to defend himself without withdrawing. Accordingly, we hold that the trial court erred by refusing to give to the jury a self-defense instruction.

■ As to Foster's contention that he was entitled to have the jury instructed on defense of others, we hold that the trial court did not err in refusing the instruction. Foster's tendered instruction was an erroneous statement of the Virginia law. However, because the issue will necessarily arise on remand, we address what is the state of the law in Virginia on defense of others. The Supreme Court has clearly recognized that one is privileged to use force in defense of family members. *See Newberry v. Commonwealth*, 191 Va. 445, 459, 61 S.E.2d 318, 324 (1950); *Green v. Commonwealth*, 122 Va. 862, 871, 94 S.E. 940, 942 (1918); *Hodges v. Commonwealth*, 89 Va. 265, 272, 15 S.E. 513, 516 (1892). We find no Virginia cases, nor have any been cited to us, determining whether and when a person can use force to protect or defend a third person. Generally, however, this privilege is not limited to family members and extends to anyone, even a stranger who is entitled to claim self-defense. *See* 40 Am. Jur. 2d *Homicide* § 170 (1968); *In re Neagle*, 135 U.S. 1, 75-76 (1890); *State v. Saunders*, 330 S.E.2d 674, 675, 76 (W. Va. 1985); *Yardley v. State*, 100 S.W. 399, 400 (Tex. Crim. App. 1907); *State v. Bowers*, 65 S.C. 207, ____, 43 S.E. 656, 657-58 (1903); *Stanley v. Commonwealth*, 86 Ky. 440, ____, 6 S.W. 155, 155-57 (1887); *Mitchell v. State*, 22 Ga. 211, 234 (1857). Like self-defense, the circumstances in which the protection of others may be raised as a defense are carefully circumscribed so as to preclude such a claim in situations where one has instigated the fray in order to provide an excuse for assaulting or murdering his enemy. In a majority of jurisdictions, a person asserting a claim of defense of others may do so only where the person to whose aid he or she went would have been legally entitled to defend himself or herself. 40 Am. Jur. 2d *Homicide* § 171 (1968). Thus, the right to defend another "is commensurate with self-defense." *Id.* Consequently, in those jurisdictions which recognize the defense, the limitations on the right to defend one's self are equally applicable, with slight modifications, to one's right to defend another. One must reasonably apprehend death or serious bodily harm to another before he or

she is privileged to use force in defense of the other person. The amount of force which may be used must be reasonable in relation to the harm threatened. *See Diffendal*, 8 Va. App. at 421, 383 S.E.2d at 25-26 (delineating limitations in self-defense context).

■ Jurisdictions which recognize the defense are split on the question whether the person to whose aid one comes must be free from fault in order to claim the defense of protection of others. The majority of those courts which have addressed the question have adopted an objective test so that one "may act on and is governed by the appearance of conditions when he arrives upon the scene, provided he acts honestly and according to what seems reasonably necessary in order to afford protection." 40 Am. Jur. 2d *Homicide* § 172 (1968). Thus, under the majority view, in order to justifiably defend another, the defendant must reasonably believe that the person being defended was free from fault; whether the defended person was, in fact, free from fault is legally irrelevant to the defense in those jurisdictions. This view is based on the principle that one should not be convicted of a crime for attempting to protect one whom he or she perceives to be a faultless victim from a violent assault. Under this approach, the policy of the law is to encourage individuals to come to the aid of perceived victims of assault. *Id.* We find this position to be well-grounded in principle and policy. Accordingly, we hold that the law pertaining to defense of others is that one may avail himself or herself of the defense only where he or she reasonably believes, based on the attendant circumstances, that the person defended is without fault in provoking the fray.

Foster's proffered instruction, however, did not state the law as we have defined it and, thus, misstates the law. While the proffered instruction correctly noted that the defendant must reasonably believe that the person to be defended is in danger of great bodily harm, it did not address the issue that the defendant must reasonably believe that the person he or she is defending was without fault in instigating the altercation. Thus, even if Foster reasonably believed that Hooks was threatened with great bodily harm, he could not have availed himself of the protection of others defense unless he reasonably believed that Hooks was without fault in provoking the fray with Robinson. Because the chief purpose of jury instructions is to explain to the jury the law of the case, *Cooper*, 2 Va. App. at 500, 345 S.E.2d at 777, a trial court

may refuse to grant an instruction which misstates the applicable law.

For the reasons stated, we reverse the judgment of conviction and remand the case for retrial if the Commonwealth be so advised.

*Reversed and remanded.*

Baker, J., and Willis, J., concurred.