COURT OF APPEALS OF VIRGINIA


Present:  Judge Bray, Senior Judges Duff and Overton
Argued at Alexandria, Virginia


DENITA ANTOINETTE HALL

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 0642-98-4          JUDGE RICHARD S. BRAY
                                         APRIL 13, 1999
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                        John E. Kloch, Judge

          Jonathan D. Westreich for appellant.

          Leah A. Darron, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     Denita Antoinette Hall (defendant) was convicted in a bench

trial for unlawfully wounding Sylvester Davis (Davis), a violation

of Code § 18.2-51.  On appeal, defendant challenges the

sufficiency of the evidence to support the conviction, proving,

instead, self-defense as a matter of law.  We disagree and affirm

the conviction.

     The parties are fully conversant with the record, and this

memorandum opinion recites only those facts necessary to a

disposition of the appeal.

     In reviewing the sufficiency of the evidence, we consider

the record in "the light most favorable to the Commonwealth,

_____

[*]Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

granting to it all reasonable inferences deducible therefrom," Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987), discarding all conflicting evidence of the accused. See Lea v. Commonwealth, 16 Va. App. 300, 303, 429 S.E.2d 477, 479 (1993) (citation omitted). The credibility of witnesses, the weight accorded testimony, and the inferences to be drawn from proven facts are matters to be determined by the fact finder. See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989). The judgment of a trial court will be disturbed on appeal only if plainly wrong or without support in the record. See Code § 8.01-680.

Here, the evidence established that defendant and Davis had engaged in a violent relationship for approximately twelve years, during which they cohabited and produced five children. When Commonwealth witness Warren Hinton arrived at their home during the early afternoon of October 2, 1997, defendant was "arguing at [Davis] about something." Hinton watched as defendant "snatched a burning cigarette . . . [and] beer . . . out of [Davis'] hand," and Davis "'smushed' (PHONETIC) her head." Hinton "turned around and left" but reentered the house "[a]bout a minute" later.

Upon returning, Hinton found defendant "hysterical," armed with a knife in her raised right hand, and facing Davis, then holding a chair "at his abdomen section[,] . . . swinging it out." When Hinton heard defendant warn Davis "'I told you what was going

to happen the next time you hit me' . . . [or] 'put your hands on me,'" Hinton "yelled . . . and asked why was they doing that." Davis "dropped" the chair, and defendant "stabbed him."

At trial, Davis, testifying as a <u>defense</u> witness, recalled that, while "he was trying to hit [defendant] with the chair, . . . trying to hit her in the head," defendant "had a knife . . . [and] was defending herself." He "dropped" the chair, "lung[ing] at her forward . . . because [he] thought [he] could take the knife from her[,] . . . [and] was stabbed." However, during a hospital interview with Detective William Scott immediately following the incident, Davis stated that "him and [defendant] had been arguing, and [defendant] went into the kitchen and came out with a knife, and that's when he grabbed the chair, and he held it up in front of him to protect himself."

Defendant testified that Davis had been drinking heavily and "started screaming . . . about . . . the telephone bill." An argument ensued, and Davis "mudged (PHONETIC) and slapped [defendant] in [her] face." He then "pick[ed] up [a] metal chair, . . . chased [defendant] down the hallway . . . towards the kitchen," and "swung [the chair], . . . hit[ting] the back of [her] leg." Defendant "picked . . . up" a steak knife, "to keep [Davis] back." Davis suddenly "dropped the chair," and attacked defendant "with his hands, proceeding to choke [her]." Defendant recalled that she was "terrified" and "took the knife and . . .

popped him in the chest."  When confronted with a prior inconsistent statement, also given to Detective Scott, defendant explained that she was "scared, . . . hysterical, . . . tried to minimize what happened, . . . and . . . didn't want to be blamed for it."

In convicting defendant of unlawful wounding, the trial judge concluded that "the only totally credible witness is Mr. Hinton, . . . [who] was motivated towards the Defendant, if anyone, . . . was largely unimpeached . . ., and . . . [was] supported almost totally by the physical evidence."  The court noted that "Mr. Davis' credibility is seriously questioned . . . [because] [h]e was drunk when it happened, . . . changed his story a number of times, and [testified] inconsistent[ly] with the physical evidence[,] . . . [and] Mr. Hinton's testimony."  Similarly, the trial judge discounted defendant's testimony, observing that she "admitted telling lies" and had an "obvious interest in the case."

It is well established that "a person who reasonably apprehends bodily harm by another is privileged to exercise reasonable force to repel the assault."  Diffendal v. Commonwealth, 8 Va. App. 417, 421, 382 S.E.2d 24, 25 (1989) (citations omitted).  However, such force "'shall not, except in extreme cases, endanger human life or do great bodily harm.'"  Id. at 421, 382 S.E.2d at 26 (citation omitted).  "Self-defense is an affirmative defense which the accused must prove by introducing

sufficient evidence to raise a reasonable doubt about his guilt." Smith v. Commonwealth, 17 Va. App. 68, 71, 435 S.E.2d 414, 416 (1993) (citation omitted).  "Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact."  Id. (citation omitted).

Here, the evidence disclosed that a violent argument erupted between defendant and Davis after defendant "snatched" a cigarette and beer from Davis' hand, and Davis "smushed" defendant's head. Defendant armed herself with a knife and confronted Davis, warning him, "'I told you what was going to happen the next time you hit me.'"  Davis held a chair against his person to "protect himself" from defendant, but she "popped" him in the chest when he lowered it.  Such circumstances support the trial court's finding that defendant stabbed Davis "with intent to maim, disfigure, disable or kill him unlawfully," unaided by the privilege of self-defense.

Accordingly, we affirm the conviction.

Affirmed.