COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judge Annunziata and
         Senior Judge Overton
Argued at Chesapeake, Virginia


ANDRE BARBOSA

                                   MEMORANDUM OPINION[*] BY
v.   Record No. 2577-00-1          JUDGE ROSEMARIE ANNUNZIATA
                                        JULY 16, 2002
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                       Thomas S. Shadrick, Judge

         Steven M. Oser for appellant.

         Richard B. Smith, Senior Assistant Attorney
         General, (Jerry W. Kilgore, Attorney General,
         on brief), for appellee.


     On October 23, 2000, Andre Barbosa was convicted at a jury

trial of aggravated malicious wounding, in violation of Code

§§ 18.2-51.2(A) and 18.2-10, grand larceny, in violation of Code

§ 18.2-95, and use of a firearm in the commission of aggravated

malicious wounding, in violation of Code § 18.2-53.1.  He

received a sentence of 25 years, with 18 years suspended, for

malicious wounding, three years for the firearm charge, and a

suspended three-year sentence for grand larceny.

     Barbosa appeals his convictions on the ground that the

trial court erroneously denied his motion to present a jury

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

instruction on self-defense.  He contends that the evidence at trial supported an instruction of self-defense.  The Commonwealth contends that the defendant did not preserve this question at trial.  See Rule 5A:18.  Assuming, without deciding, that the issue was properly preserved, we find the court did not err in refusing to instruct the jury on the law of self-defense and affirm Barbosa's conviction.

## Analysis

> Because the trial court refused to grant the instruction proffered by the accused, we view the facts in the light most favorable to the defendant.  However, an instruction is proper only if supported by more than a scintilla of evidence.  If the instruction is not applicable to the facts and circumstances of the case, it should not be given.  Thus, it is not error to refuse an instruction when there is no evidence to support it.

Commonwealth v. Sands, 262 Va. 724, 729, 553 S.E.2d 733, 736 (2001) (citations omitted).  If "the evidence [at trial] raised factual issues regarding the reasonableness of the force used [or] the reasonableness of the perceived threat," it is error to refuse a proffered self-defense instruction that correctly states the law.  Foster v. Commonwealth, 13 Va. App. 380, 384, 412 S.E.2d 198, 200 (1991).

"[T]he law of self-defense is the law of necessity."  Foote v. Commonwealth, 11 Va. App. 11, 16, 396 S.E.2d 851, 856 (1990).  Therefore, to support an instruction for self-defense, the accused must demonstrate that he "exercis[ed] reasonable force

-

to repel the assault."  Id.  "[T]he amount of force used to defend oneself must not be excessive and must be reasonable in relation to the perceived threat."  Foster, 13 Va. App. at 383, 412 S.E.2d at 200.  "The privilege to use such force is limited by the . . . well recognized rule that a person 'shall not, except in extreme cases, endanger human life or do great bodily harm.'"  Diffendal v. Commonwealth, 8 Va. App. 417, 421, 382 S.E.2d 24, 26 (1989) (quoting Montgomery v. Commonwealth, 98 Va. 840, 843, 36 S.E. 371, 372 (1990)).  "Thus, . . . [one] who expects to be attacked should first employ the means in his power to avert the necessity of self-defence, and, until he has done this, his right of self-defence does not arise."  Hash v. Commonwealth, 88 Va. 172, 192, 13 S.E. 398, 405 (1891).  "The 'bare fear' of serious bodily injury, or even death, however well-grounded, will not justify the taking of human life."  Commonwealth v. Sands, 262 Va. 724, 729, 553 S.E.2d 733, 736 (2001) (citations omitted).

In this case, Barbosa contends that he was entitled to a self-defense instruction because there was evidence at trial that he "fear[ed] for his physical safety" and that he believed that he was about to be brutally beaten by the victim and his friends.  The evidence, however, viewed in the light most favorable to the defendant, makes manifest that Barbosa's use of deadly force was not warranted by the perceived impending attack by the victim.  See id. at 729, 553 S.E.2d at 736.

-

According to Barbosa, the following preceded his admitted shooting of the victim in the abdomen:

> [The victim] said – He said, Come here, and I started walking towards him; and he was like – he started arguing with me; and I waved my hand; and I said, Listen – I was like, I don't want to argue with you; and he was like . . . What are you going to do about it?  And I was like, Listen, chill; and I looked at [my friend] Tom; and he was just looking to me to see what was going on. You couldn't even tell that we were arguing. The dude was just saying mean things.  He wasn't raising his fists or anything, and then he got real close and like real close like his face right here; and he said, What are you going to do about it?  Huh?  Huh?
>
> When he said that, all his friends surrounded me; and I just took a step back; and I lifted up my shirt; and I put it behind the handle [of the gun]; and I said, Listen, I got a gun on me.  I'm not going to fight you.
>
> And when I did that, his friend grabbed him. . . .  [The victim's friend, Trini,] said Listen, man, chill; and [the victim] told his friend F that; and he was like, What are you going to do with that?  Huh?  And he got real close – close to me like my chest, and I backed up, and I pulled out the gun; and I said, Listen, chill; and I put it to him; and I was like, Stop; and he was like, You ain't going to do nothing; and he tried to rush forward; and he was bumping the gun; and that's when I was just scared; and I took a step back; and I just squeezed the trigger; and I just fired.

He further testified that he was afraid of receiving a "pretty bad" gang beating as he had in the past.  During an earlier incident, he had suffered a "busted face," and a broken rib.  However, he admitted that no one had touched him, that the

-

victim did not have a weapon, that he was the only one involved who had a gun and that the victim had made no threats although stating that he wasn't afraid of Barbosa or his gun. He also acknowledged that he told his friend Tom Kestler, who was present during the incident, "I probably shouldn't have done that," suggesting there was no reason to use a gun to defend himself.

Under these facts, we hold, therefore, that it was not "necessary" for Barbosa to use deadly force to avert the perceived impending "gang beating." The fact that he was surrounded by Serna and his friends and that Serna "bumped into his gun," stating he was not afraid, does not constitute an "overt act indicative of imminent danger." See Vlastaris v. Commonwealth, 164 Va. 647, 651-52, 178 S.E. 775, 776-77 (1935) (holding that accused's fear for his life was without foundation because victim made no overt act at the time of the shooting). Furthermore, we hold that the deadly force Barbosa used in the circumstances of this case was not reasonable and proportionate. See Hash, 88 Va. at 192, 13 S.E. at 405 ("The party making the defence may use no instrument and no power beyond what will simply prove effectual."); Foote, 11 Va. App. at 16, 396 S.E.2d at 856 (holding that an accused may claim self-defense only if the force employed against his potential attacker was necessary to repel the assault). Accordingly, Barbosa did not present a sufficient evidentiary predicate for a self-defense instruction.

-

See <u>Foster</u>, 13 Va. App. at 383, 412 S.E.2d at 200 ("[T]he amount of force used to defend oneself must not be excessive and must be reasonable in relation to the perceived threat.").

<u>Affirmed.  </u>