UNPUBLISHED

## *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **9th** *day of* **December, 2014**.

LaDawn Shrieves King,                                                                                          Appellant,

 against          Record No. 1684-13-4
                        Circuit Court No. FE-2013-175

Commonwealth of Virginia,                                                                              Appellee.


Upon a Petition for Rehearing En Banc

Before the Full Court


On November 7, 2014 came the appellee, by the Attorney General of Virginia, and filed a petition requesting that the Court set aside the judgment rendered herein on October 28, 2014, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof, the petition for rehearing *en banc* is granted with regard to the issue(s) raised therein, the mandate entered herein on October 28, 2014 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35(b). The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. It is further ordered that the appellee shall file twelve additional copies of the appendix previously filed in this case. In addition, any party represented by counsel shall file twelve electronic copies of their brief (and the appendix, if the party filing the appendix is represented by counsel) with the clerk of this Court.

The electronic copies must be filed on twelve separate CDs or DVDs and must be filed in Adobe

Acrobat Portable Document Format (PDF).[1]


A Copy,

Teste:

Cynthia L. McCoy, Clerk

By: *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

---

[1] The guidelines for the creation and submission of a digital brief package can be found at www.courts.state.va.us, in the Court of Appeals section under "Resources and Reference Materials."

COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Huff and Chafin
Argued at Alexandria, Virginia

UNPUBLISHED

LADAWN SHRIEVES KING

MEMORANDUM OPINION[*] BY
v.      Record No. 1684-13-4          JUDGE GLEN A. HUFF
OCTOBER 28, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Brett A. Kassabian, Judge

Amy L. Wilson (Amy L. Wilson, PLC, on briefs), for appellant.

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


LaDawn Shrieves King ("appellant") appeals her convictions for malicious wounding, in

violation of Code § 18.2-51, and use of a firearm in the commission of a felony, in violation of

Code § 18.2-53.1. Following a jury trial in the Circuit Court of Fairfax County ("trial court"),

appellant was sentenced to a total of eight years' incarceration in the Virginia Department of

Corrections. On appeal, appellant contends that the trial court erred by failing to properly

instruct the jury on the defense of accident. For the following reasons, this Court reverses

appellant's convictions and remands this matter to the trial court for a new trial, at the discretion

of the Commonwealth.

I. BACKGROUND

On appeal, "'we consider the evidence and all reasonable inferences flowing from that

evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'"

Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*)

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)). So viewed, the evidence is as follows.

At trial, the Commonwealth and appellant presented two different accounts of the events that transpired. Dwayne King ("King"), appellant's husband, testified that he and appellant had been discussing divorce for a year and a half. On the evening of November 20, 2012, King was rubbing appellant's head to provide relief for appellant's migraine. Appellant fell asleep on King's lap and, shortly thereafter, King went to sleep on the other couch in the living room. King next remembered "waking up to a gunshot." At first, King did not realize he had been shot in the right forearm, but he noticed appellant "standing on the other side of the couch" with a "gun in [her] hand." King reached for his cell phone, but it was no longer in the location he had left it. Appellant "immediately ran through the kitchen," and King followed. Upon entering the kitchen, King seized the house phone, "locked [himself] into the bathroom on the main level," and called 911. At the same moment, appellant ran upstairs. While King was on the phone, he heard appellant "come down the stairs" and the front door slam. Shortly thereafter, King exited the bathroom and "saw that [appellant's] vehicle was gone."

Appellant testified that on November 20, 2012, she and King were "[i]n over our heads in a lot of ways."[1] Because of this, appellant decided she "didn't want to live anymore" and was going to kill herself using her firearm. Next, appellant explained she loaded her firearm and took King's phone so she could leave a message for him. Afterwards, appellant went downstairs into the kitchen and sent her son a text message saying she loved him. According to appellant, she then put the phone down and saw King standing in front of her. King then reached for the firearm in appellant's

---

[1] Appellant stated that she and King were struggling "financially, emotionally, just in terms of dealing with [their] children." Appellant indicated she "felt like [she] was worthless, not performing up to [her] standards."

- 2 -

right hand and attempted to pull it away. During the struggle, the firearm discharged and wounded King in the right forearm.

Unaware that King had been injured, appellant "put the gun to [her] head" and attempted suicide, however, the firearm failed to discharge. Next, appellant immediately ran up the stairs, locked herself in a bathroom, and attempted suicide again. After the firearm failed to discharge again, appellant grew fearful that the police would arrive and take her to a mental institution. Consequently, appellant hid the firearm in the upstairs linen closet, ran to her vehicle, and drove away. At the hospital, King was examined by Dr. Michael Pitta ("Pitta") who indicated in medical records that King "was shot by his girlfriend accidentally in his right forearm." Pitta did not testify at trial.

At trial, the jury was given instructions defining malicious wounding[2] and malice.[3] Appellant relied on an accident theory in her defense and proffered a modified model jury instruction ("Instruction L") on accident. The instruction stated:

> Where the defense is that malicious wounding was an accident, the defendant is not required to prove this fact. The burden is on the Commonwealth to prove beyond a reasonable doubt that the

---

[2] Instruction No. 4, in relevant part, stated:

> The defendant is charged with the crime of malicious wounding. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> (1) That the defendant shot Dwayne King; and
>
> (2) That such shooting was with intent to kill or permanently maim, disfigure or disable Dwayne King; and
>
> (3) That the act was done with malice.

[3] Instruction B, in relevant part, defined malice as "that state of mind which results in the intentional doing of a wrongful act to another without legal excuse or justification . . . ." Instruction 6, in pertinent part, instructed, "You may infer malice from the deliberate use of a deadly weapon unless, from all the evidence, you have a reasonable doubt as to whether malice existed."

malicious wounding was not accidental.  If after considering all the evidence you have a reasonable doubt whether the malicious wounding was accidental or intentional, then you shall find the defendant not guilty.[4]

The trial court rejected the instruction explaining, "My basis for denying L is that I think the other instructions adequately instruct the jury as to the fact that it has to be an intentional act, whether or not it is unlawful wounding, a malicious wounding or assault."

During deliberations the jury asked, in writing, two questions.  The first question was, "If a weapon were discharged during a struggle or accidentally, would this constitute a shooting with intent to kill, as stated in element two of malicious wounding?" The second jury question was, "What is the legal definition of an unlawful wounding?"  Over the objection of defense counsel the trial court responded to the jury's questions by stating, "You must rely upon the instructions previously provided and give the words in each of the instructions their plain and ordinary meaning."

After further deliberations the jury returned its verdict finding appellant guilty of malicious wounding and use of a firearm in the commission of a felony.  This appeal followed.

## II.  ANALYSIS

### A.  Standard of Review

"As a general rule, the matter of granting and denying instructions does rest in the sound discretion of the trial court." Cooper v. Commonwealth, 277 Va. 377, 381, 673 S.E.2d 185, 187 (2009) (citing Daniels v. Commonwealth, 275 Va. 460, 466, 657 S.E.2d 84, 87 (2008)).  On appeal, "[o]ur 'sole responsibility in reviewing [jury instructions] is to see that the law has been

---

[4] Appellant's refused jury instruction is taken from Martin v. Commonwealth, 218 Va. 4, 235 S.E.2d 304 (1977).  In Martin, the trial court determined that the refusal to instruct the jury on accident was error because "[i]n none of the instructions granted by the trial court, however, was the jury told that the burden was upon the Commonwealth to prove the killing was not accidental and that the jury should acquit the defendant if it entertained a reasonable doubt whether the death was accidental or intentional." Id. at 6-7, 235 S.E.2d at 305.

clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)).  Moreover, "in deciding whether a particular instruction is appropriate, we view the facts in the light most favorable to the proponent of the instruction." Cooper, 277 Va. at 381, 673 S.E.2d at 187.

Additionally, "an instruction must be supported by more than a scintilla of evidence." Hatcher v. Commonwealth, 218 Va. 811, 814, 241 S.E.2d 756, 758 (1978) (citing Gibson v. Commonwealth, 216 Va. 412, 417, 219 S.E.2d 845, 849 (1975)).  "'The weight of the credible evidence that will amount to more than a mere scintilla . . . is a matter to be resolved on a case-by-case basis' by assessing the evidence in support of a proposition against the 'other credible evidence that negates' it." Woolridge v. Commonwealth, 29 Va. App. 339, 348, 512 S.E.2d 153, 158 (1999) (quoting Brandau v. Commonwealth, 16 Va. App. 408, 411-12, 430 S.E.2d 563, 565 (1992)).

### B.  Accident Jury Instruction

On appeal, appellant contends that the trial court erred by failing to properly instruct the jury on accident.  Specifically, appellant contends that because there was sufficient evidence in the record supporting appellant's accident theory in the case, the proffered instruction was proper and should have been given.  The Commonwealth contends that the instructions used at trial fully and fairly covered the principles of law at issue.  The Commonwealth asserts that because the instructions on malice required an intentional act, the jury had to conclude appellant's actions were not accidental.

"'A defendant is *entitled* to have the jury instructed only on those theories of the case that are supported by evidence.'" Eaton v. Commonwealth, 240 Va. 236, 255, 397 S.E.2d 385, 397 (1990) (emphasis added) (quoting Frye v. Commonwealth, 231 Va. 370, 388, 345 S.E.2d 257,

280 (1986)). "When reviewing jury instructions, an appellate court must ensure that the law has been 'clearly stated' and that the 'instructions cover all issues' fairly raised by the evidence." Mouberry v. Commonwealth, 39 Va. App. 576, 581, 575 S.E.2d 567, 569 (2003) (quoting Tice v. Commonwealth, 38 Va. App. 332, 339, 563 S.E.2d 412, 416 (2002)). "A trial court should instruct the jury, when requested to do so, 'on all principles of law applicable to the pleadings and the evidence.'" Id. at 582, 575 S.E.2d at 569 (quoting Dowdy v. Commonwealth, 220 Va. 114, 116, 255 S.E.2d 506, 508 (1979)). Indeed, "[i]f a proffered instruction finds any support in credible evidence, its refusal is reversible error." McClung v. Commonwealth, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975) (citing Taylor v. Commonwealth, 186 Va. 587, 591, 43 S.E.2d 906, 908 (1947)).

"Where the conflicting evidence tends to sustain either the prosecution's or defense's theory of the case, the trial judge must instruct the jury as to *both theories*." Foster v. Commonwealth, 13 Va. App. 380, 383, 412 S.E.2d 198, 200 (1991) (emphasis added) (citing Delacruz v. Commonwealth, 11 Va. App. 335, 338, 398 S.E.2d 103, 105 (1990)). Further, "[i]f there is evidence in the record to support the defendant's theory of defense, the trial judge may not refuse to grant a proper proffered instruction." Id. Consequently, "the trial court must instruct on both theories to guide a jury in their deliberations as to the law applicable to the case, depending upon how the jury decides the facts." Id. (citing Cooper v. Commonwealth, 2 Va. App. 497, 500, 345 S.E.2d 775, 777 (1986)). Parties are not entitled, however, to duplicative instructions covering the same principle. Remington v. Commonwealth, 262 Va. 333, 349, 551 S.E.2d 620, 631 (2001).

"[V]iew[ing] the facts in the light most favorable to the proponent of the instruction," this Court finds that credible evidence supported appellant's proffered instruction. Cooper, 277 Va. at 381, 673 S.E.2d at 187. At trial, King testified in support of the prosecution's malicious wounding theory of the case. Specifically, King indicated that he woke up after being

deliberately shot by appellant. In contrast, appellant offered a strikingly different account of the incident. Appellant's testimony indicated that she planned to commit suicide on the night of the incident; however, King woke before she could complete the act. According to appellant, King attempted to disarm appellant while appellant was sending a goodbye message to their child. During the struggle, King reached for appellant's right arm, which held the firearm, the firearm accidentally discharged, and King was wounded. Moreover, appellant's testimony established that she did not intend to deliberately harm King but wanted to commit suicide.

In the very unique facts of this case and while balancing the relevant standards of review, this defendant was entitled to the instruction at issue. See Cooper, 277 Va. at 381, 673 S.E.2d at 187. Appellant's testimony amounts to "more than a scintilla of evidence." Eaton, 240 Va. at 255, 397 S.E.2d at 297. Additionally, the trial court's response to the jurors' question, "You must rely upon [all of] the instructions previously provided and give the words in each of the instructions their ordinary and plain meaning" is too simplistic given the circumstance presented. Rather, "when a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty properly to instruct a jury about the matter." Jimenez v. Commonwealth, 241 Va. 244, 250, 402 S.E.2d 678, 681 (1991). From a review of the record, the principle of law covering "accident" was vital to the appellant in this case.

Accordingly, appellant was entitled to have a properly stated instruction given on her theory of the case, without the need to rely solely on a negative implication arising from the Commonwealth's proffered instructions on the law of malice. As appellant's theory of the case was supported by more than a scintilla of evidence, the trial court committed an error of law in failing to grant appellant's proffered instruction covering her theory of the case. Consequently, this Court finds that the trial court abused its discretion in failing to properly instruct the jury on accident.

## III.  CONCLUSION

Based on the foregoing, this Court finds that the trial court erred by failing to properly instruct the jury on accident and remands the case to the trial court for a new trial, if the Commonwealth be so advised.

<u>Reversed and remanded.</u>