COURT OF APPEALS OF VIRGINIA


Present:   Judge Clements, Senior Judges Willis and Annunziata
Argued at Alexandria, Virginia


VALERIE JEANETTE SANDERS, S/K/A
 VALERIE JEANETTE RICHARDSON
                                                 MEMORANDUM OPINION* BY
v.        Record No. 2574-04-4                   JUDGE JEAN HARRISON CLEMENTS
                                                      OCTOBER 4, 2005
COMMONWEALTH OF VIRGINIA


                 FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                                 Lisa B. Kemler, Judge

            Denise Jakabcin Tassi for appellant.

            Richard B. Smith, Senior Assistant Attorney General (Judith
            Williams Jagdmann, Attorney General, on brief), for appellee.


       Valerie Jeanette Sanders was convicted in a jury trial of malicious wounding, in violation of

Code § 18.2-51.  On appeal, Sanders contends the trial court erred in denying her proffered

instruction on self-defense without fault.  We agree and, therefore, reverse Sanders's conviction and

remand this case for further proceedings.

       As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this

appeal.

                                        I.  BACKGROUND

       The undisputed evidence presented at trial proved that, during the early morning hours of

March 15, 2004, Timothy Wilson was visiting his three children and the children's mother, Thelma

---

*Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Chase, at Chase's Alexandria apartment. While at the apartment, Wilson heard a knock at the door.

Answering the door, Wilson was met by Sanders; Sanders's daughter, Latoya Sanders (Latoya); and

Latoya's female cousin. The women requested to speak with Chase regarding a dispute between

their two families. Wilson denied the women's request and stepped onto the landing outside the

apartment. Shortly after Wilson shut the door behind him, an altercation ensued between Wilson,

Sanders, and Latoya. At some point during that altercation, Sanders stabbed Wilson.

Sanders was subsequently charged with the malicious wounding of Wilson.[1] Her trial on

the charge commenced on July 23, 2004. During trial, the Commonwealth and Sanders presented

conflicting witness testimony as to the early morning events of March 15, 2004.

Testifying on behalf of the Commonwealth, Wilson stated that, while at Chase's apartment,

he heard a "[l]oud banging" on the door. Neither Chase nor Wilson was expecting any visitors.

Thinking the knock "was just a little too loud," Wilson, who normally let Chase answer the door

"because it's her house," got up to answer the door himself.

Upon opening the door, he saw Sanders, Latoya, and Latoya's cousin on the landing outside

the door. Wilson, who weighed 250 pounds, recounted that the women were "[b]ouncing around"

and appeared "antsy, like in anticipation of something." Latoya stated, "Where is your bitch? I

want to see her." Recognizing that Latoya was referring to Chase, Wilson responded, "Well, you

can't see her. You can see me." Wilson saw nothing in any of the women's hands. According to

Wilson, he then stepped outside of the apartment and shut the door behind him, at which point

Latoya "maced" him in the eyes and Sanders stabbed him in the stomach.

Wilson further testified that, immediately after the stabbing, an unidentified male came up

the stairway leading to the apartment, grabbed and held Sanders, and said to Wilson, "You

---

[1] Sanders was also charged with the possession of a weapon after having been convicted of a felony, in violation of Code § 18.2-308.2. The jury acquitted Sanders of that charge.

shouldn't hit a woman, you shouldn't hit a woman." Wilson denied having hit any of the women during the altercation.

Testifying on her mother's behalf, Latoya stated that the three women went to Chase's apartment "to talk" to Chase about an incident that had occurred the day before. According to Latoya, who lived in a building "directly across" from Chase, Wilson had participated with Chase's son in an assault on Sanders's son the day before the altercation at Chase's apartment occurred. Latoya testified that, shortly before the altercation at Chase's apartment, Wilson was outside and she had told him she "was going to come over [to Chase's apartment] and talk" about her brother's assault.

Latoya recounted that, while she herself was angry with Wilson for assaulting her brother, Sanders was "totally calm" when the women arrived at Chase's apartment. She testified that, when Sanders knocked on Chase's door, Wilson, who was on the phone, opened the door and asked what they wanted. Sanders "calm[ly]" asked Wilson whether there had been an incident between him and her son the day before. Latoya admitted that she might have said to Wilson, "Where is your bitch?" After a brief verbal exchange, Wilson got off the phone and told the women, "[Chase] ain't coming out here, you're going to talk to me."

According to Latoya, Wilson then stepped outside the apartment onto the landing, "slammed the door" behind him, and "just . . . went after" Sanders. He "rushed" her and put her "in a headlock." Describing the headlock, Latoya continued, "[Sanders's] head was under both arms. It's like [Wilson] had [Sanders] wrapped under his arms. . . . [A]nd [Sanders's] head was cradled under an arm." Latoya testified that she then sprayed Wilson with pepper spray, which was "always on [her] key ring," and Wilson released Sanders. At that point, Latoya saw that Wilson was bleeding. Latoya had not seen any blood before Wilson put Sanders in a headlock. According to Latoya, the altercation lasted "a matter of seconds."

Latoya further stated that, even though her view of the headlock was sometimes obstructed by "other people," she was "absolutely certain" Wilson had Sanders in a headlock because she "saw it." Latoya testified Sanders was standing only "a couple feet in front of [her]." Latoya also testified that she did not see Sanders with a knife at the apartment, but admitted that her mother had been known to carry a knife on her person and was carrying a purse that was "as big as a book bag that day."

At the conclusion of all the evidence, the Commonwealth and Sanders submitted their respective jury instructions to the trial court. With regard to the issue of self-defense, the Commonwealth submitted an instruction based on Virginia Model Jury Instruction 52.510 for self-defense with fault:

> If you believe from the evidence that the defendant was to some degree at fault in provoking or bringing on the fight and if you further believe that when attacked, she retreated as far as she safely could under the circumstances, in a good faith attempt to abandon the fight, and made known her desire for peace by word or act, and she reasonably feared, under the circumstances as they appeared to her, that she was in danger of bodily harm, and she used no more force than was reasonably necessary to protect herself from the threatened harm, then you shall find the defendant not guilty.

Sanders submitted an instruction based on Model Jury Instruction 52.500 for self-defense without fault:

> If you find from the evidence that the defendant was without fault in provoking the difficulty, and that the defendant reasonably feared, under the circumstances as they appeared to him, that he was in danger of harm, then the defendant had the right to use such force as was reasonably necessary to protect himself from the threatened harm. If you further believe that the defendant used no more force than was reasonably necessary to protect himself from the threatened harm, then you find the defendant not guilty.

The trial court granted the Commonwealth's self-defense with fault instruction, but denied Sanders's self-defense without fault instruction, declaring:

> [W]ith respect to the self-defense instruction, it's my decision that the proper instruction would be the instruction on self defense with some degree of fault and the reason why I'm making this decision is that based on the evidence that's been presented, [appellant] went up to the apartment where Mr. Wilson was, along with two other individuals, that certainly there's evidence in which jurors can infer that she went to see him with a knife. And they may find that she didn't, but there's certainly evidence from which they could draw that inference and that there's some evidence in which the jury could concluded [sic] that she showed up there, you know, possibly with the idea of engaging in some sort of fight. They may find otherwise.
>
> So I think based on the evidence that's been presented, both from the Commonwealth and from the Defense, it supports an instruction on self-defense with fault.

The trial court so instructed the jury.

After deliberating, the jury convicted Sanders of malicious wounding. On October 6, 2004, the trial court sentenced Sanders to five years' imprisonment.

This appeal followed.

## II. ANALYSIS

On appeal, Sanders contends the trial court erred in denying her proffered instruction on self-defense without fault because she provided sufficient evidence to support that instruction. In response, the Commonwealth contends the trial court did not err by refusing Sanders's proffered instruction because it "cannot possibly be said that [Sanders] was totally without fault in this matter, i.e., that she did not in any way contribute to the affray." We agree with Sanders.

"When reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction." Commonwealth v. Vaughn, 263 Va. 31, 33, 557 S.E.2d 220, 221 (2002). The fundamental purpose of any jury instruction is "to inform the jury of the law guiding their deliberations and verdict." Keen v. Commonwealth, 24 Va. App. 795, 807, 485 S.E.2d 659, 665 (1997). Thus, we are mindful, in reviewing jury instructions, of our responsibility "to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." Swisher v. Swisher, 223

Va. 499, 503, 290 S.E.2d 856, 858 (1982); see Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988).  In fulfilling this responsibility, we observe that "[a] party is entitled to have the jury instructed according to the law favorable to his or her theory of the case if evidence in the record supports it."  Foster v. Commonwealth, 13 Va. App. 380, 383, 412 S.E.2d 198, 200 (1991).  Indeed, in a criminal proceeding,

> [b]oth the Commonwealth and the defendant are entitled to appropriate jury instructions on the law applicable to their version of the case.  See Banner v. Commonwealth, 204 Va. 640, 645-46, 133 S.E.2d 305, 309 (1963).  When evidence exists in the record to support the defendant's theory of defense, the trial judge may not refuse to grant a proper, proffered instruction.  See Painter v. Commonwealth, 210 Va. 360, 365, 171 S.E.2d 166, 170-71 (1969); Delacruz v. Commonwealth, 11 Va. App. 335, 338, 398 S.E.2d 103, 105 (1990). . . .  "Where evidence tends to sustain both the prosecution's and the defense's theory of the case, the trial judge is required to give requested instructions covering both theories."  Diffendal v. Commonwealth, 8 Va. App. 417, 422, 382 S.E.2d 24, 26 (1989).

O'Banion v. Commonwealth, 33 Va. App. 47, 55-56, 531 S.E.2d 599, 603 (2000) (en banc).

"However, an instruction is proper only if supported by more than a scintilla of evidence."  Commonwealth v. Sands, 262 Va. 724, 729, 553 S.E.2d 733, 736 (2001).  Thus, to grant Sanders's requested instruction on self-defense without fault, the record must contain more than a scintilla of evidence that Sanders was not at fault in provoking the physical altercation with Wilson.

Viewing the evidence presented at trial in the light most favorable to Sanders, we conclude that more than a scintilla of evidence supports Sanders's requested instruction on self-defense without fault.  Sanders's daughter, Latoya, testified to a without fault version of events in which Sanders neither initiated nor provoked a fight with Wilson.  Specifically, Latoya testified that Sanders was "totally calm" when she went to Chase's apartment to "talk"; that the 250-pound Wilson, knowing the women were coming to speak to Chase, answered the door; that

Sanders "calm[ly]" asked Wilson about the incident between him and her son; and that Wilson, following a brief verbal exchange, stepped outside, slammed the door behind him, and rushed Sanders, placing her in a headlock. Latoya testified that she then sprayed Wilson with the pepper spray she had on her key ring. Although Sanders may have been known to carry a knife on her person, Latoya denied having seen a knife in Sanders's hands before Wilson placed her in the headlock. Moreover, according to Latoya, Wilson bled only after he had released Sanders from his clutch.

Furthermore, excerpts from Wilson's testimony support Latoya's version of events. Specifically, Wilson, like Latoya, testified that he saw nothing in Sanders's hands prior to the physical altercation. Wilson also testified that, immediately after the altercation, an unidentified man told him that he "shouldn't hit a woman."

Because the record contains more than a scintilla of evidence supporting her theory of defense, Sanders was entitled to her proffered instruction on self-defense without fault. Without such an instruction on the law governing a without fault theory, the jury had no guidance on how to resolve the issue of conviction had they found that Sanders was without fault in provoking the physical altercation.

We hold, therefore, that the trial court erred in denying Sanders's proffered instruction on self-defense without fault. Accordingly, we reverse Sanders's conviction and remand for a new trial if the Commonwealth be so advised.

<u>Reversed and remanded.</u>