COURT OF APPEALS OF VIRGINIA

Present: Judges Causey, Raphael and Senior Judge Clements

ROGER LEE EUBANKS, JR.

MEMORANDUM OPINION*
v.       Record No. 1005-24-2                    PER CURIAM
                                                 NOVEMBER 5, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Claude V. Worrell, II, Judge

(David A. Eustis; Eustis & Graham, PC, on briefs), for appellant.

(Jason S. Miyares, Attorney General; Sabina B. Thaler, Assistant
Attorney General, on brief), for appellee.

Following a bench trial, the Circuit Court of Albemarle County convicted Roger Lee

Eubanks, Jr., of strangulation and assault and battery of a family or household member. By final

order entered on June 11, 2024, the trial court sentenced him to a total of 5 years and 12 months

of incarceration with all but 1 year and 18 months suspended. On appeal, Eubanks asserts that

the trial court "erred in rejecting [his] self-defense argument." For the following reasons, we

affirm.[1]

BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth."

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v.*

_____

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] After examining the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the dispositive issue or issues have been authoritatively
decided, and the appellant has not argued that the case law should be overturned, extended,
modified, or reversed." Code § 17.1-403(ii)(b); Rule 5A:27(b).

*Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

In September 2023, Deana Lane lived on Overlook Drive in Albemarle County. She had ended her previous romantic relationship with Eubanks but temporarily allowed him to stay at her residence because he was homeless. Although she was not "fully comfortable" with this arrangement, she did not "want to rock the boat" because he had abused her in the past.

On the morning of September 15, 2023, Eubanks argued with Lane as soon as she awoke. She told him to stop because she was tired of the verbal abuse. The argument turned physical in the living room. Lane "tapped him on the cheek[] because he was getting in [her] face," and she did not "deserve to be treated that way." Her contact was "[d]efinitely a tap" because she was "not going to start a conflict with somebody" who had "threatened [her] before." Her "tap" did not leave a mark on Eubanks's face.

Eubanks then threw Lane onto the couch and pinned her arm against it. As she resisted, she was pushed to the floor. He pinned her arms with one hand, placed his body weight on her legs, and choked her for 20 to 25 seconds with his other hand. She could not breathe and lost control of her bladder.

When Eubanks stood, and released Lane, she grabbed her phone, locked herself in the bathroom, and called the police. Eubanks picked the bathroom door lock, pinned her against the shower, and held a knife to her throat. He threatened to kill her, and that if she "did this to him," they both were "going to die."

Eubanks fled before the police arrived. Albemarle County Police Officer Conner responded to the residence and spoke with Lane, who was "[v]ery frantic" and "[t]errified." Lane had significant marks on her collar bone, bruising on her neck and wrist, and a sore left knee. Lane went to the emergency room for treatment, though she declined a forensic exam because of the cost. Lane and Officer Conner both photographed Lane's injuries at the hospital. Officer Conner obtained arrest warrants for and a protective order against Eubanks the same day.

After Lane returned home from work later that day, Eubanks texted her that he had "left something for" her and that he was looking into her home through the blinds. When Lane left for work the next day, she saw Eubanks sitting in the passenger seat of her car. She called the police before Eubanks saw her, but she feared that he would flee in her car when the police arrived. Accordingly, she opened the driver's door, took the keys, and walked away.[2] Eubanks followed her and asked to take a shower in her residence. Upon consideration, Lane agreed so that the police could arrest him when they arrived, which they did.

After the incident, Lane had trouble speaking for several days due to the bruising and swelling on her neck. She also had trouble eating.

Lane stated on cross-examination that she tapped Eubanks on the cheek because he "kept yelling" at her and she "was getting very stressed out." She denied punching Eubanks. She also denied throwing hot coffee at him, but said that a cup of coffee spilled when he threw her against the couch. She acknowledged that the police never asked for the knife, so she never gave it to them and eventually she threw it away.[3]

---

[2] Lane testified that she routinely left her keys in the car "to help it be easier for me in the morning to get going."

[3] On direct examination Lane described the knife as a "switch blade"; on cross-examination, she agreed that it was a "pocket knife."

Eubanks did not present evidence. In closing, the prosecutor argued that the trial court should convict Eubanks based on Lane's testimony, which was bolstered by the photographic evidence and her contemporaneous reports. Eubanks's trial counsel argued that "Lane testified that she hit him first." Trial counsel stated: "[Lane] said she attacked him first, she hit him, and he says he was defending himself. That is his defense. He was defending himself, and she admitted that she hit him first." The defense also argued that there was "no evidence of any kind of a serious injury."

The prosecutor responded: "The defense presented no evidence of self-defense. [Eubanks] doesn't say anything. He didn't say he was defending himself."[4] Moreover, the prosecutor contended that any assertion of self-defense would be incredible, because Lane "slapp[ing]" or "tapp[ing]" Eubanks to "get [him] out of [her] face" could not justify him choking her or holding a knife to her throat. The prosecutor also asserted that Lane's testimony and the photographic evidence were "powerful evidence of her injuries."

The trial court summarized that Lane testified that Eubanks "assaulted her and strangled her," and defense counsel had stated that this was done as a result of Lane's tapping or slapping his face. The trial court stated that "even without . . . Eubanks having testified," there was "some evidence that the [c]ourt [could] consider" regarding self-defense. But the trial court concluded that even if there was "some reason that" Eubanks "needed to defend himself," he "certainly exceed[ed] that by introducing a deadly weapon" and strangling Lane. Rather, the trial court stated that Eubanks's behavior was "part and parcel of just plain assaultive conduct."

Accordingly, the trial court convicted Eubanks of strangulation and assault and battery. Eubanks now appeals, asserting that the trial court "erred in rejecting" his "self-defense

---

[4] Eubanks did not object to this argument or move for a mistrial.

argument," given that the prosecutor "commented upon [his] decision not to testify," and the trial court "acknowledged and itself remarked" on that fact.

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"Any person who, without consent, impedes the blood circulation or respiration of another person by knowingly, intentionally, and unlawfully applying pressure to the neck of such person resulting in the wounding or bodily injury of such person is guilty of strangulation." Code § 18.2-51.6. Further, "[a]ny person who commits assault and battery against a family or household member is guilty of a Class 1 misdemeanor." Code § 18.2-57.2(A). "A battery is the 'willful or unlawful touching of the person of another by the assailant, or by some object set in motion by him.'" *Woodson v. Commonwealth*, 74 Va. App. 685, 693 (2022) (quoting *Wood v. Commonwealth*, 149 Va. 401, 404 (1927)). "An intentional touching qualifies as a battery unless

the actor has some legal justification or excuse. The presence of a justification or excuse transforms what would otherwise be a criminal offense into a permissible act. Common justifications for battery include consent and self-defense." *Id.* at 694.

Virginia law "has long recognized that a person who reasonably apprehends bodily harm by another is privileged to exercise reasonable force to repel the assault." *Diffendal v. Commonwealth*, 8 Va. App. 417, 421 (1989). "A defendant bears the burden of introducing evidence supporting the affirmative defense of self-defense." *Washington v. Commonwealth*, 75 Va. App. 606, 617 (2022). "'Whether an accused' meets this threshold 'is a question of fact.'" *Id.* (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). "In order to establish self-defense, a defendant must show that he . . . 'reasonably believed that [he] was in danger of'" bodily harm. *See id.* (alterations in original) (quoting *Jones v. Commonwealth*, 71 Va. App. 70, 86 (2019)).

Virginia law recognizes two forms of self-defense: "'self-defense without fault,' referred to as justifiable self-defense, and 'self-defense with fault,' known as excusable self-defense." *Id.* (quoting *Bell v. Commonwealth*, 66 Va. App. 479, 487 (2016)). Justifiable self-defense "occurs when the accused is '*without any fault on his part in provoking or bringing on the difficulty*.'" *Id.* (quoting *Avent v. Commonwealth*, 279 Va. 175, 199 (2010)). By contrast, excusable self-defense

> occurs when the accused is at "some fault in the first instance in provoking or bringing on the difficulty" but, when attacked, he "retreats as far as possible, announces his desire for peace," and acts "from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm."

*Id.* (quoting *Bell*, 66 Va. App. at 487). Both types of self-defense constitute a complete defense. *See Jones*, 71 Va. App. at 94.

Lane testified that, as Eubanks continued to verbally harass her, she tapped his cheek. He then threw her onto the sofa, pinned her to the floor, and choked her for 20 to 25 seconds, thereby preventing her from breathing and causing her bruising and swelling. After she fled into the bathroom, he pursued her, held a knife to her throat, and threatened to kill her. This testimony, viewed in the light most favorable to the Commonwealth, amply established the elements of strangulation and assault and battery of a family or household member. *See* Code §§ 18.2-51.6, -57.2(A).

The trial court also was entitled to reject Eubanks's assertion of self-defense. The trial court noted that Lane's testimony that she tapped Eubanks's cheek could be "some evidence" that he apprehended some degree of bodily harm. But there was no evidence establishing that it was reasonably necessary for Eubanks to throw Lane onto the couch and choke her on the ground for 20 to 25 seconds to repel her "attack," such that it was. Eubanks then pursued her into the bathroom, held a knife to her throat, and threatened to kill her. Indeed, this evidence suggests that Eubanks acted out of anger rather than fear.

Eubanks seeks to intertwine another argument on appeal: that the prosecutor and the trial court improperly commented on his exercise of his right not to testify. "It is firmly established that any comment made by a prosecutor referring to the defendant's right not to testify is a violation of the defendant's privilege against self-incrimination guaranteed by the Fifth Amendment of the United States Constitution." *Hazel v. Commonwealth*, 31 Va. App. 403, 411 (2000). Further, Code § 19.2-268 prescribes that a criminal defendant's "failure to testify" may not "be the subject of any comment before the court or jury by the prosecuting attorney."

We reject Eubanks's contention that the prosecutor's closing argument violated his Fifth Amendment right. A remark by a prosecutor that might otherwise be improper "may become proper under the invited error doctrine when the area has been opened to fair comment by the

argument and comment of defense counsel." *Johnson v. Commonwealth*, 236 Va. 48, 51 (1988) (quoting *Lincoln v. Commonwealth*, 217 Va. 370, 373 (1976)). Although "the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt," that principle does not "forbid the prosecutor from fairly responding to an argument of the defendant by adverting to that silence." *Id.* at 52 (quoting *United States v. Robinson*, 485 U.S. 25, 34 (1988)).

During closing arguments, defense counsel asserted that Lane "said she attacked [Eubanks] first, she hit him, and he says he was defending himself." The prosecutor accurately rejoined that Eubanks did not "say anything. He didn't say he was defending himself." Although the prosecutor's argument necessarily referenced the fact that Eubanks did not testify, she was not asking the trial court to draw any impermissible inferences from that fact. Rather, she was "fairly responding" to Eubanks's claim of self-defense. *Johnson*, 236 Va. at 52. Neither the Fifth Amendment nor Code § 19.2-268 required the prosecutor to let defense counsel's inaccurate description of the evidence go unanswered.

We further conclude that the trial court did not improperly consider Eubanks's silence in reaching its verdicts. The trial court—no less than the prosecutor—had to address Eubanks's misplaced assertion that "he sa[id] he was defending himself" from Lane. Moreover, viewed in context, the trial court's statement does not show either that it considered Eubanks's silence as substantive evidence of his guilt or drew any adverse inferences from it. Quite the contrary, by observing that there was some evidence that might support Eubanks's self-defense claim even though he did not testify, the trial court endeavored to frame that self-defense claim—however tenuous—in the best possible light. The trial court then concluded that, even examining the self-defense claim in the most charitable fashion, the claim lacked any merit.

In sum, we find no basis to conclude that either the prosecutor or the trial court violated Eubanks's Fifth Amendment right against self-incrimination. Rather, Eubanks's argument in

support of a self-defense claim prompted an accurate response from the prosecutor and a verbal ruling from the trial court. Thus, there is no basis for this Court to disturb the trial court's verdicts, which are fully supported by the evidence.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*