UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Causey, Raphael and Senior Judge Clements

JIHAD ARLIK RUFFIN

v.     Record No. 0625-24-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE DORIS HENDERSON CAUSEY
DECEMBER 2, 2025

FROM THE CIRCUIT COURT OF HENRICO COUNTY
L. A. Harris, Jr., Judge

(Kevin Purnell; Kevin D. Purnell, PLLC, on brief), for appellant.

(Jason S. Miyares, Attorney General; Kimberly A. Hackbarth, Senior
Assistant Attorney General, on brief), for appellee.


Following a jury trial, Jihad Arlik Ruffin was convicted of felony murder while in the

commission of shooting into an occupied building, Code § 18.2-33, use of a firearm in

commission of murder, Code § 18.2-53.1, and maliciously discharging a firearm within an

occupied building, Code § 18.2-279.  On appeal, Ruffin argues that the evidence was insufficient

to convict him "while [he] was defending a third party from another party aiming and firing a

firearm at such third party."  Ruffin also argues that there was insufficient "evidence of malice

that [he] fired a firearm into an occupied building while [he] was defending a third party from

another party aiming and firing a firearm at such third party."  For the following reasons, we

affirm the trial court's judgment.[1]

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the facts and legal arguments are adequately presented in
the briefs and record, and the decisional process would not be significantly aided by oral
argument."  *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

BACKGROUND[2]

On July 3, 2021, a fatal shooting occurred inside the "NOLA by Nisha the Plug" (NOLA) store, located in the shops at White Oak Village in Henrico. The incident was captured on the store's surveillance cameras.

At 5:34 p.m., Ruffin, Vermonte Fitzgerald, and Renardo Brown were inside NOLA together. Ruffin and Fitzgerald were seen standing together near the store's entry-exit door, while Brown was situated near the cash register. Detective Jeff Ensor testified that earlier video footage showed that the three had been inside the store for approximately 14 minutes before the shooting occurred.

At 5:34:35 p.m., Trevon Chappelle and Jamiriah Washington entered NOLA. Fitzgerald immediately advanced toward them as they walked down the left side aisle of the store. At 5:34:43 p.m., the footage shows Ruffin drawing a firearm from his waistband and holding it in his hand. Fitzgerald also drew a firearm from his waistband at this point, as depicted in still images taken from the store's "front left" camera. At 5:34:50 p.m., as Chappelle passed by, Fitzgerald pushed into him with his left elbow while holding a firearm in his right hand. Chappelle then raised his own firearm toward Fitzgerald, leading Ruffin to fire three shots at Chappelle.

One of Ruffin's bullets struck Jamiriah in the head, causing her to collapse on the spot. The video footage clearly depicted her lying motionless on the floor as Chappelle fled the store. The remaining footage, taken from different camera angles (back left, back warehouse, and

_____

[2] On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

warehouse left), showed the group's actions immediately after the shooting. Fitzgerald ran to the back storage area of the store and hid behind wooden shelving. Brown drew his firearm and positioned himself behind a merchandise display in the back of the store. Ruffin initially ran toward the back of the store but then peered into the left aisle twice before retreating to the back storage area. The three men then fled the scene together through the store's back exit. The video also showed other customers and employees within the store, including what appeared to be a young elementary-school-aged girl.

Detective Kevin Harver recovered three bullets from the scene, all of which were forensically linked to Ruffin's firearm, a Glock model 32 Gen4 .357 SIG pistol. Forensic analysis confirmed that Ruffin's firearm[3] was in "mechanical working condition."

Further forensic analysis traced the bullets' paths throughout the building. One bullet went through the wall of NOLA into the adjacent Kay Jewelers store. Bullet fragments from this projectile were recovered from Kay Jewelers' bathroom floor, with two of the fragments being identified as having been fired from Ruffin's firearm. A second bullet was found on the floor next to the cash register in NOLA, and it, too, was traced back to Ruffin's Glock. The third bullet, which was recovered during Jamiriah's autopsy from her right posterior scalp, was also identified as having been fired from Ruffin's firearm. The medical examiner determined that Jamiriah died of a gunshot wound to the head.

Following the Commonwealth's presentation of its case, Ruffin moved to strike the evidence, arguing that it was insufficient to establish that he acted with malice. The trial court denied the motion, explaining that malice was a factual determination for the jury to resolve.

Ruffin testified at trial and provided the following account of events. He stated that he was not from Henrico but lived in Petersburg, Virginia. He recalled that on the day of the

---

[3] Ruffin stipulated that this was his firearm.

- 3 -

shooting, he had taken a Lyft to Fitzgerald's house. Ruffin testified that he had known Fitzgerald for several months, having met him through a mutual friend, and he met Brown for the first time that day. According to Ruffin, the three men then went to the shops at White Oak Village, where Ruffin carried a loaded firearm for personal protection. He testified that he and Fitzgerald initially visited the Hibbett Sports store, while Brown was not with them. Inside Hibbett Sports, Ruffin claimed he and Fitzgerald made eye contact with an individual in a red shirt, although he did not know the person. Ruffin also noticed a "young lady" walking behind him, but he denied any close interaction with her or Chappelle.

Ruffin stated that he suggested leaving Hibbett Sports and going to NOLA, where Brown joined them. Ruffin admitted that the three were inside NOLA for a while, though he could not recall what Fitzgerald and Brown were doing during that time. Ruffin claimed that he remembered the "person in the red shirt" entering NOLA and again made eye contact with him. He also remembered the young lady walking behind him. According to Ruffin, he grew concerned and had "just a feeling" due to his prior encounter with Chappelle and the young lady at Hibbett Sports. Ruffin admitted to placing his hand on his weapon and drawing it as Chappelle walked up the aisle.

Ruffin acknowledged that when Chappelle raised his firearm toward Fitzgerald, he fired three shots. He further testified that his gun jammed afterward and he fled to the back of the store. Ruffin stated that he, Fitzgerald, and Brown then left the store through the back exit and proceeded to an unknown apartment complex. Ruffin claimed that he did not discuss the shooting with Fitzgerald or Brown and later learned via social media that a "teen" had been shot and killed. Ruffin admitted that he initially thought Chappelle had been the victim.

The jury found Ruffin guilty of felony murder, use of a firearm in the commission of a felony, and malicious discharge of a firearm within an occupied building. Following the

conviction, Ruffin filed a motion to set aside the verdict, arguing that the evidence was insufficient to prove malice and that his defense of others claim should have been established as a matter of law. The trial court denied the motion, stating that the jury was entitled to assess the credibility of the witnesses and to rely on the video evidence in making their determination. This appeal followed.

## ANALYSIS

### Standard of Review
### Sufficiency of the Evidence

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Defense of Others

Ruffin asserts that he was acting in defense of another individual, Fitzgerald, who was under fire from Chappelle,[4] thus, there was insufficient evidence to sustain the convictions against him. However, the record supports the jury's conclusion that Ruffin was not legally justified in discharging his weapon in a crowded, occupied setting.

"'Self-defense is an affirmative defense . . . and in making such a plea, a "defendant . . . assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the mind[] of the [finder of fact].'"" *Taylor v. Commonwealth*, 77 Va. App. 149, 170 (2023) (alterations in original) (quoting *Commonwealth v. Sands*, 262 Va. 724, 729 (2001)). "Whether an accused [defendant] proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact." *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993). "The trier of fact determines the weight of evidence in support of a claim of self-defense." *Gardner v. Commonwealth*, 3 Va. App. 418, 426 (1986).

"A picture . . . speak[s] a thousand words, and these do." *Campbell v. Commonwealth*, 12 Va. App. 476, 484 (1991) (en banc). Along with Ruffin's "uncontradicted" testimony, as he characterizes it, the jury was also able to "witness" the encounter thanks to video footage of the random acts of violence in NOLA on July 3. Thus, the jury viewing this video, along with Ruffin's self-serving testimony, could reasonably conclude that Ruffin's actions were not defensive but instead represented retaliation or escalation, made in a moment of volatility without regard for the lives around him. Even where an initial act of defense may be justified, the law does not excuse a reckless and deadly overreaction, especially in a populated area.

---

[4] Chappelle was sentenced to 15 years with 6 years suspended for charges related to the violence referenced herein.

More importantly, the jury was entitled to disbelieve Ruffin and conclude he was "lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011). Ruffin's testimony did not explain his relationship with Fitzgerald, nor how he reasonably believed Fitzgerald faced imminent harm from his "eye contact" with Chappelle.[5] Ruffin testified he and Fitzgerald did not even talk about the events afterwards. Ruffin had the burden of persuading the factfinder that he reasonably acted in defense of Fitzgerald, and he simply failed to carry this burden. *See Diffendal v. Commonwealth*, 8 Va. App. 417, 421 (1989).

Based on the evidence before it—viewed in the light most favorable to the Commonwealth—a jury could have reasonably rejected Ruffin's claim of defense of others.

Accordingly, there was adequate evidentiary support for the jury's decision that the defense-of-others defense did not apply.

Malice

Appellant argues that the trial court erred in finding the evidence sufficient to establish malice in support of his conviction under Code § 18.2-279 for discharging a firearm within an occupied building. We disagree.

Under Code § 18.2-279, the Commonwealth must prove "beyond a reasonable doubt . . . (1) [t]hat the defendant discharged a firearm within a building 'occupied by one or more persons'; and (2) [t]hat the firearm was discharged 'in such a manner as to endanger the life or lives of such person or persons'; and (3) [t]hat the act was done with malice." Model Jury Instrs.—Crim. No. 18.100 (2025) (quoting Code § 18.2-279).

---

[5] Although Chappelle's use of deadly force against Fitzgerald constituted an overt act that could potentially justify a defensive response, the law still requires that Ruffin's own response be reasonable under the circumstances and proportionate to the threat. *Diffendal v. Commonwealth*, 8 Va. App. 417, 421 (1989) ("[T]he amount of force used must be reasonable in relation to the harm threatened.") Thus, the jury was free to conclude that Ruffin's conduct demonstrated conduct that far exceeded any lawful defensive action.

Our Supreme Court "first addressed the application of Code § 18.2-279 in *Dowdy v. Commonwealth*, 220 Va. 114 (1979). In *Dowdy*, [they] held that the statute was 'a legislative declaration that human lives may be endangered when a deadly weapon is maliciously discharged at or against a building occupied by people and that such conduct is felonious.'" *Ellis v. Commonwealth*, 281 Va. 499, 505 (2011) (quoting *Dowdy*, 220 Va. at 117).

Later, our jurisprudence distinguished the "malice" prong of the statute by holding that Code § 18.2-279 "is not a specific intent crime; rather, it is a general intent offense." *Fleming v. Commonwealth*, 13 Va. App. 349, 354 (1991).[6] "Code § 18.2-279 contains no such intent requirement." *Meade v. Commonwealth*, 74 Va. App. 796, 811 (2022).

Ruffin posits that the central question is whether he acted with *malice*, and we have demonstrated above that the "malicious" intent standard in § 18.2-279, does not refer to the *specific* "malicious" intent, but rather *general* intent. Malice is defined as "the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Watson-Scott v. Commonwealth*, 298 Va. 251, 255-56 (2019) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). "Malice may be inferred from the 'deliberate use of a deadly weapon unless, from all the evidence, [there is] reasonable doubt as to whether malice existed.'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 507 (2020) (alteration in original) (quoting *Strickler v. Commonwealth*, 241 Va. 482, 495 (1991)). Whether a defendant acted with malice is a question of fact for the jury. *Id.*

The record indisputably establishes the first two elements. Appellant admitted to firing three rounds inside the store at approximately 5:34 p.m. on July 3. Surveillance video captured

---

[6] Appellant attempts to distinguish his behavior from *Fleming* by arguing that *Fleming* "[was] about a specific intent to induce fear . . . by firing close to *20* shots in comparison to [Ruffin] firing *three*[,]" while also acknowledging that "*Fleming* is not directly on point." (Emphases added). This assertion is an understatement. As noted above, the statute is a general intent statute, thus, the number of shots fired is likely irrelevant.

the incident in real-time and showed that at the time of the shooting, the store was actively occupied by customers and employees, including Jamiriah, and even a child of elementary-school age.

Ruffin's firearm was later recovered and found to be in mechanical working condition. Forensic analysis confirmed that all three bullets recovered at the scene were fired from Ruffin's weapon. One bullet penetrated the wall separating the NOLA store from the adjacent Kay Jewelers store, while another was recovered near the cash register.

Moreover, the record contains ample evidence from which a rational trier of fact could conclude that Ruffin acted with malice when he fired three rounds from a semi-automatic pistol inside a crowded retail store, thereby endangering multiple individuals and fatally striking Jamiriah.

Here, the jury was presented with surveillance video and testimony establishing that Ruffin intentionally drew his loaded firearm before any shots were fired, raised it in the direction of Chappelle, and discharged three rounds in rapid succession. The surrounding conduct reinforces a finding of malice. Ruffin admitted that his firearm was loaded with a bullet in the chamber and that he fired with the specific intention of hitting Chappelle. His gun only ceased firing because it jammed.

Malice can also be inferred from Ruffin's indifference to the danger his actions posed to innocent bystanders. The shooting occurred in a retail establishment open to the public on a Saturday afternoon, at a mall that law enforcement described as "very active at all times of the day and night." Ruffin's decision to discharge three high-velocity rounds in such an environment, without warning, and without regard for the numerous civilians nearby, plainly endangered the lives of others. Indeed, video evidence showed that Jamiriah was walking behind the intended target when she was struck in the head, collapsed, and died on the floor.

Further, Ruffin's conduct after the shooting reflects a consciousness of guilt. Rather than remain on scene or seek medical help for the victim, appellant fled through the store's back exit with Fitzgerald and Brown, hid in an unknown apartment complex, and later claimed he believed the person he shot was the man he was aiming at—not Jamiriah, who died at the scene. These actions undermine any suggestion of accident or legal justification. As our Supreme Court has emphasized, Code § 18.2-279 prohibits discharging a firearm in an occupied building where "one or more persons" may be imperiled, regardless of their identity or intended target. *Bryant v. Commonwealth*, 295 Va. 302, 309 (2018); *Meade*, 74 Va. App. at 811.

Accordingly, we find that the trial court did not err in denying appellant's motion to strike or his motion to set aside the verdict. The evidence was sufficient for the jury to find, beyond a reasonable doubt, that Ruffin acted with malice in discharging a firearm within an occupied building, thereby endangering multiple lives and causing Jamiriah's death.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*